Okay. Good afternoon, all. We have one case that we're hearing this afternoon. We are joined remotely by our colleague, Judge Ambrose. Judge Ambrose, you're hearing and seeing us? Yes. Very good. So we'll proceed with Pitsilides v. Barr. And we will start with you, Mr. Roberts. Good afternoon, Your Honors. May it please the Court, Richard Roberts for the appellant, George Pitsilides. I would like to reserve three minutes of my time. Granted. Thank you. This Court's recent decision in range reinforces and solidifies that 922G1 as applied to Pitsilides is unconstitutional. It is clear based on range that Pitsilides remains a member of the people protected by the Second Amendment. This Court rejected the notion that because Pitsilides was classified as a felon by the government, he loses the protection of the Second Amendment. The Court saw, quote, no reason to adopt a reading of the people that excludes Americans from the scope of the Second Amendment while they retain their other constitutional rights. Well, how about the next aspect of the opinion? To the extent we talked about individualized findings, do you agree with the government that the right next step would be to remand for the district court to make those sorts of findings? No, I don't think it's necessary in this particular case to find a remand to do a particular individualized determination. Like this court found in range, the record contains no evidence that Pitsilides is a danger to any individualized person. His crime that he was committed was running a book. He was a bookie. There was no element in that particular offense of violence or violence towards anybody else. Is that all we look at? Do we look only at the predicate offense? And even then, do we look only at the elements? Or can we look at the conduct with the predicate offense? And can we look more broadly at what's transpired between the time of the conviction and the present? Well, you can certainly, if you're going to make an individualized determination, and I don't believe the most recent case in range decides that, it wouldn't be on, it would be on his predicate offense. What makes him ineligible to possess a firearm? Here it's bookmaking. His only other conviction that the – Or is there a special danger of misuse of a firearm in the – for what he was arrested for, for activities between 06 and 11? Those show that there were security provided in connection with the gambling operation. And one would think security means that there are people there with guns and this is an illegal operation. So there might be, we don't know, but there might be a special danger of misuse of a firearm. I would argue that because there's security there, we don't know whether or not they were armed and it's simply a poker game. That particular predicate offense, however, even what he pled guilty for would not render him ineligible to purchase or possess a firearm under 922 G1. How do you read our opinion in range to constrain the court's consideration to the predicate offense? Range talked about all sorts of aspects and characteristics of range as an individual, including up to the present, didn't it? It did. It did say for the last 30 some odd years he had not had any criminal activity other than a speeding ticket. The only other criminal activity that Pistolides has been engaged in, according to the records, is his 2011 conviction for running a poker game. He has had no other criminal activity, as the record reflects, and no other criminal activity whatsoever since 2011. You don't suggest that we're limited to the elements of the offense. This isn't phrased like the categorical approach. Should we be thinking about how gambling offenses generally might be correlated with violence? Should we be thinking about the way in which this particular gambling offense, either the Pennsylvania one or the Virginia one, was in fact connected with drugs or violence, which we don't know a whole lot about here? Isn't a remand the right course? I don't believe a remand's the right course. I think the record's clear based on those two convictions. If you want to do an individualized finding, one, I don't think that's required under the range decision. Is it allowed? Is there anything in range that forbids that? I think range was decided on the fact that the government did not sustain its burden to demonstrate history and tradition. All right. Well, let's say the government now wants to sustain its burden. There's nothing in range that forecloses a remand. To sustain its burden, I think the historical analysis can be done by the judges up here. Supplemental briefs following the original range decision, we both laid out a history and tradition analysis based on gambling offenses that this court asked for in this particular offense. And Pistolini submitted a supplemental brief that went through the history of gambling offenses at the time of the founding and demonstrated and found that none of those offenses led to a lifetime or even temporary disarmament of an individual convicted of any of those offenses. The majority of those— And the question that I asked you about the possible use or prevalence or existence of guns in connection with security, you said we don't know. And isn't that something that, picking up on Judge Krause's one of her first questions, that it would call for a remand to have some fact-finding done by the district court? That is a possibility, Your Honor, and I'll do frankness. However, I don't think the government has sustained its initial burden to demonstrate a history and tradition precluding individuals like Pistolini's in this case with gambling-related offenses as a principle underlying the Second Amendment that allows the government to permanently disarm that individual. And if we're talking about the range decision, that's where range came down. The government did not sustain its burden to demonstrate a principle underlying the Second Amendment. In this case, it was tried before Bruin, I think. It was certainly before Rahimi, right? So different standard of law. The court thought it was under Binderup and thought it was easy enough to reject this claim under Binderup. So new legal standard, isn't the right thing to kind of not dispel it a little too much and let the district court in the first instance find the facts that would help us to then assess it rather than our reaching out in the first instance? I would say no. Range was in the same situation. Range was decided originally at the district court under the original Binderup standard. After it was appealed, the Supreme Court took the Bruin decision. Originally, the Bruin decision was made. This court made its original range decision, which was then appealed and remanded back after Rahimi was decided. And I think the situation between range and Pistolini's is identical, and both cases can be decided in the first instance at this court. But can't we take from Rahimi at least that where there is a special danger of misuse of firearms, that that presents the situation where historically permanent disarmament would be permissible? Well, I believe Rahimi talked about an individualized finding that that particular defendant presented a risk to another individual, which was okay to have temporary at least disarmament in that situation based on his actions with the PFA and his other criminal activity that the Supreme Court had found. However, in this case, there is nothing in the record to demonstrate any history of violence between the two predicate appointments. When we take that and combine it with what we have, range had the omission of a number of things. For example, there was no recidivism, in essence, no additional criminal history that followed the original conviction over a significant period of time. What we have here indicates that there is ongoing criminal activity. Does that count for anything in the analysis of whether there is a special danger of misuse of firearms? No, Your Honor. I don't believe that the range decision recently stands for that. It just stands for the fact that the government had not sustained its burden to demonstrate a history of tradition. If it had not sustained its burden, then that's about that case. But now we have to figure out whether the government, in terms of sustaining its burden in this case, Mr. Soter might stand up and say the government wants a chance to show that it can sustain its burden. Why not give it that chance? Well, it had its chance in range. It did supplemental briefing in that particular case. As I mentioned to Your Honor, that rate case came up under the original Bender Up standard. And based on this Court's review of the record and the supplemental briefing by both the parties decided that the government had not sustained its burden. I believe that this case has gone through a similar trajectory. As the new Supreme Court case law came about, this Court asked for supplemental letter briefs, which the parties then supplemented their argument. But when he was at argument, Mr. Soter conceded he couldn't point to anything individual about range that might be dangerous. The government abjured making any argument. He made a categorical argument about people who have felony convictions. It's possible he may stand up here and say, you know, we don't know enough to know if that's the case here. Why should the government be foreclosed from trying to make that argument that he is distinguishable from range? Well, because I believe under the range standard, they have to first sustain their burden as a tradition of disarming individuals. I think when we get to the second step, it's independent of the first. If he can't sustain his burden demonstrating a historical tradition at the time of founding of disarming individuals like Pistolides in this case, and they don't sustain their burden, it's unconstitutional to apply that particular prohibition to him in this instance. Why don't we have enough in this record, given the stipulation, to at least raise the specter of a current risk of danger, where his operation was staffed by numbers of people, security, waitresses, dealers. All of that seems to suggest a large-scale cash-based operation. The presence of security suggests that there's a recognition of potential violence and a willingness to use force as needed. Why don't those things indicate that there's enough here that additional fact-finding is warranted? Well, first, I think those crimes were a substantially long time ago. There's been no criminal activity whatsoever since 2011 at the latest, and we understand the record. The facts were stipulated to at the court below about his conviction, and there was no term of violence that he agreed to plead guilty to, nor in the original charging documents from Pennsylvania. So going back, I mean, in essence, you're giving him to re-litigate that case that occurred 30-some-odd years ago. The facts are of record what he pled guilty to or what he pled no contest to in this particular instance, so he didn't make an admission under the law to any of those particular facts. He just said he wouldn't contest those facts. That begs the question, only, I mean, just generally speaking, to what extent should we consider Mr. Pizzolitti's post-conviction conduct, specifically the details of the game that he ran from 2006 to 2011? I don't believe you should consider – I would submit, Your Honor, that you don't consider it at all. I believe that we talk about the predicate offense that disarms him and whether or not that predicate offense, if there's a history and tradition, disarming individuals. For example, you have a predicate offense that is not indicating violence, but a person post-conviction for that is engaging in fairly violent activity, perhaps a fight with a neighbor, whatever it might be, and you're telling me that a court can't take that into account in determining whether that person is violent or has a special danger of misuse of a firearm? Well, if he was charged and convicted of that conduct, he certainly could, Your Honor. However, in essence, what you're doing is asking that particular individual to litigate an offense that may or may not be an offense. Rahimi, though, did not require a conviction. The Rahimi case, there was nothing in it that said there had to be a conviction for Rahimi. That was something the Fifth Circuit had focused on, and the Supreme Court said that's not a Second Amendment problem. I mean, you have separate due process arguments, but not a Second Amendment issue. May I answer your question, Your Honor? Yes. So in Rahimi, you're correct. There was no conviction, but there was a judicial finding in that particular case. A judge found that based on these facts, this individual was a violent— Okay, well, could the government get that judicial finding on remand here? He's currently a violent individual. If it took in—yes, it could. Judge Ambrose, did you have another question? I'll wait until we hear more. Okay. Thank you. Thank you. Good afternoon. May it please the Court. Kevin Soder from the Department of Justice for the government. Why is this case different from range? It's different from range in many respects. First, beginning with the nature of the disqualifying conviction itself. Bookmaking is not understating your income on an application for food stamps to feed your family with two young children. What we had here was a criminal enterprise that took in hundreds of thousands of dollars in sports bookmaking, and that a restitution payment was required in that amount. And we have a crime that is historically associated with danger in much the same way that drug trafficking is. Where's the allegation of that? Where's the evidence of that? Where's the proof of that? So I think there are several things the Court can look to in understanding, when it goes through on a crime-by-crime basis under range, why particular felonies are going to be quite different from the one that was at issue in range. You can look to the evidence, as Your Honor mentioned, of what it indicates that crime means for someone. So we know historically why legislatures were prohibiting this was the link to organized gambling. Who were they? I think when you look back and see what studies of- What have you cited that suggests that? I think there is a paper by Blakey, I believe is his last name, that talks about the rise in these types of bookmaking statutes in the 1920s and 1930s that addresses that it really was the rise in organized crime that prompted legislatures to regulate this conduct. And then if you look to this Court's decision, talking about the same Pennsylvania statute in United States v. Williams from 1997, what the Court wrote there was that this is about offenses that are, quote, especially susceptible to the dishonest practices and organized crime connections that have historically plagued the gambling business. And then they also are regulating conduct that is aimed at, quote, increased tendency to encourage self-destructive behavior. So your argument is not one about gambling offenses broadly. It's specifically about bookmaking. This case is about the bookmaking statute. So I think the Court can certainly focus on that statute. If you are looking for broader evidence going back to the founding, I think that brings in some of the gambling statutes. But I think the Court can focus on what is it that the legislature today has decided merits punishment of more than a year in prison. If we're not comfortable resting on 20th century evidence, what is there that's closer to the founding? So I think you kind of have to go to the level of generality that you have to operate at is what are the principles that support felon dispossession generally? Now, this Court has decided that those principles do not support across the board any crime punishable by more than one year. But that doesn't mean that those same principles and same historical materials can't be used to justify disarming other felons. Let's say you want to focus on physical danger of misuse of a firearm. Is there anything connected to gambling, gambling-related offenses that's connected to physical danger closer to the founding? I think the social problem of bookmaking needing to become a crime arose, as far as I'm aware, in the early 20th century. So I think that's why drug trafficking is a good example to compare this to. As Your Honor's dissent in the Fuller-Tatar case pointed out, this association between drug trafficking and violence is something that permits legislatures to draw these sort of careful rules of thumb that say this is the type of crime for which someone can be disarmed. And you are looking at the present circumstances around that. You are not trying to say, if you took this person today back in time to the founding, how exactly would that person have been punished because there were different priorities for the criminal law. Are we able, after Rahimi and Range, to do that with such a broad brush, to say it's the nature of the offense that historically had these associations with organized crime or with violence? Or do we need something that ties the particular individual before us to violence or a particular risk of danger? I don't understand the opinion in Range to have provided an exact framework for that. I think it certainly leaves open to this court, and I think it would be very helpful to make clear that there are certain crimes where all you need to know is that crime, because the analogies are good enough. Drug trafficking would be an example. There's a category of crimes against the person, things like murder. I think there's helpful room to make clear that you do only need the record of criminal conviction in some cases. And we do submit that this case is one of those where you could rely on the existing record of the conviction and the additional information you have. The government would like a remand to try to develop additional facts. As I read the factual stipulation, there's not anything in this record that shows that a firearm was involved, organized crime was involved, or anything else. Am I right about what we know at this point in the record? You are right that there is very little in the record the stipulation has, I think. Would the government like an opportunity to develop that on remand? The government would welcome an opportunity to develop the facts that could be relevant to the legal analysis on remand. I think that one thing that would be important here is to leave open to the district court the ability, if you are remanding it anyway, the discretion to determine what types of facts actually are constitutionally necessary versus not, because it remains our position that you have before you in this stipulation ample evidence to affirm the district court's decision. What you do not have is the type of evidence that you would need if you are looking for individualized danger findings to make a ruling in favor of Mr. Pizzolitti's. So you agree there's nothing individualized danger in the record now, but you'd like the ability to develop possible evidence that he personally is dangerous. So I agree that what we know about the disqualifying conviction is that he engaged in some gambling-related offense, that he doesn't stipulate to the nature of it. In fact, he describes something that sounds like it doesn't even fit the statute over sports betting in the 1990s. Now, we also do know about the subsequent offense conduct that we were talking about. But why should your friend on the other side made a point of this, that, like he says, we should be focused on the disqualifying conviction? And in many contexts, we do that. In the categorical approach context, we just look at the elements of the offense that supposedly triggered it, and that's that. We don't go casting around more broadly. Why isn't that the right approach here? The categorical approach has plenty of its own problems in the area in which it exists, and I think this is not an area that the categorical approach should be injected into. There are going to be cases, I think, where when you are looking instead at the Second Amendment basis for disarming someone, where you see that the nature of the crime or the elements are alone sufficient to show that that person couldn't possibly meet any burden of showing they're different from other felons. But if the court concludes that it has before it someone who you just don't know enough because you think there is additional information that could matter for this particular felon, then I think that you want facts. You're talking now about his showing it, but isn't it your burden to show that he can be disarmed? Whether we think he can be disarmed because of the disqualifying prior or the other prior or individual, whatever we think the relevant test is, you've got to show that he can be disarmed because he presumptively, he's a member of the people, he presumptively has these rights, and you ought to justify disarming him. So under Bruin and Rahimi, the government has the burden for showing history and tradition that supports the disarmament at issue. Here, I think the way that works was probably best understood by the Sixth Circuit in Williams in explaining that the government has met its burden of showing that these sort of categorical disarmament laws at the founding as well as capital punishment and the state forfeiture laws show that felony, as a general matter, a felony is a permissible basis for disarming someone, and I think that this court's decision in range is... I don't think, I did not read Williams as saying just any felony automatically qualifies it. They seem to have three buckets of crimes and thought maybe those falling in the first or possibly those falling in the second would justify it, but I did not read it as saying any felony. So I was addressing Your Honor's question about the burden. What I understood Williams to be saying was that any felony meets the government's burden, and then the burden shifts to the challenger to show why he is different from other felons, and it was talking about how there are these categories of crimes you might look to in figuring out how the challenger is going to meet that burden, but there is quite a direct passage toward the end of the opinion rejecting his argument that it should be the government's burden to show this for any individual felony. But we haven't spoken to this. You're just asking us to import the Sixth Circuit's approach. I think it would be appropriate to import that, yes, and to more generally, I think, make clear that when this court said in range that the decision was a narrow one, it meant what it said, and when you're faced with someone who is quite different from Mr. Range in material respects, that person does not just sort of get the same answer on the same reasoning. When you say there's enough in the stipulation to affirm, what specifically are you pointing to in the stipulation? So the disqualifying offense alone, I think, would be enough to affirm. You could say that illegal bookmaking under this statute, under these two provisions, 55, 14, 1, and 3, is a sufficient basis to make someone not unlike other felons in the way that Brian Range is. How do you define that circumstance? Do you define bookmaking? Because it sounds like you're talking much more specifically now about bookmaking and perhaps pool selling, not the offense of gambling writ large. Correct. The offense that Mr. Pitsalidis was convicted of is an offense for either pool selling or bookmaking, is the 55, 14, 1, which, of course, kind of begs the question, or 55, 14, 3. I think it's far more specific. It's for someone who receives, records, registers, forwards, or purports or pretends to forward to another any bet or wager upon the result of a political nomination, appointment, or election, or any other contest of any nature. And that is, I think, just classically understood what it means to be a bookie taking bets. I think there's something here about it being related to sports, but there is not ample information available about if the court finds it necessary to understand his offense conduct. There have been some scandals in recent years. You have a basketball player accused of taking payoffs with an accomplice for point shaving or something. You could have a scenario like that that fell within this statute, if there's somebody out there acting as a middleman and taking this. Does that mean that the basketball player is just automatically disarmable, is taking part in that offense or at least an accomplice to that offense? I think if someone were convicted of this offense that is for bookmaking, for being the person who is taking down the bets and is in the business of this, which I think in this case we know that Mr. Pizzolitti was enough in the business of this that he had to pay a restitution payment of almost half a million dollars. I think, yes, that is enough. Of course, as I think some of the earlier questions from Judge Ambrose and others on the panel mentioned, there is this subsequent activity that I think is concerning as far as if you are focused on a prospective dangerousness determination. Mr. Pizzolitti stipulated that he was running a poker game for 27 years off and on and then consistently for five years from 2006 to 2011. So the risk of recidivism here, I think, is underscored by that. Let's say you're right. Let's say as of as of the first conviction or as of 2011, he's disarmable. Even if we grant all that, it's been 14 years, 14 years. Why is it that this should last? I mean, our opinion in range, you know, at least mentioned the temporary aspect of the Rahimi disarmament. Why shouldn't the lapse of time and the absence of any violence or any violent conviction during that time mean that even if he was disarmable then, his declaratory judgment action should succeed now? I think that reasoning would call into question quite a number of applications of Section 922G1. And so I think that would create a significant problem as far as conforming to the Supreme Court's assurances that this law is at a minimum presumptively constitutional. Depends on what the presumption means. But the way Justice Gorsuch understands the presumption, that's not a problem. Perhaps that's something that Your Honor has read into his concurrence. I don't recall him speaking to that specifically. But I think what the Supreme Court has told us, we know, is that we are looking for the principles that underlie the historical tradition. They've told us that felony possession laws are presumptively constitutional. And they have not told us something that I think suggests that we would read into the Second Amendment some sort of very strict time parameters. Fourteen years is not especially strict. I just don't know, frankly, if the court is looking to draw lines based on time. I don't know what authority there would be to moor that in to make sure that it's not just becoming sort of arbitrary, almost legislative judgments. Well, how about the fact that the disarmaments at the founding, no one has pointed us to one that lasts through one's natural life. Now, there were executions, but if someone was executed, there was usually a way back. So I'm not sure if that's right, actually. I think one that might be helpful to look to, if you're looking for kind of a combination of criminal law with disarmament law, would be a Connecticut law from 1775 that said upon being duly convicted for seditious libel, you would be disarmed and could not regain your right to have arms. Where in the briefing do you cite that statute? I think that might have been in the range briefing, which we cross-referenced. And, of course, if we had had full briefing and if we had full briefing in district court, we'll be able to cite that directly. But I believe it's cited in at least one of the opinions in range as well. If we're going to take a step beyond predicate offenses that have some element of use of force or could be characterized as inherently dangerous and look to something like this, where your argument seems to be there's an association, there's some affiliation loosely, where would we draw the line? So I think that certainly points to a potential problem of getting down this road in the first place. But, of course, understanding that we are down that road, I think that you look to the breadth of the disqualification that you're talking about. You look to evidence, you look to common sense, and you look to the judgments of legislatures today and over time. And when you look to all of those, I think you would readily conclude that someone convicted of drug trafficking can be disarmed as set forth in Judge Beavis' dissent in Fulich Tar. And I think the same reasoning informs this case as well. Would we look to the- I'm sorry. Go ahead. Would we be looking to the particular facts? I mean, say someone gave an ounce of marijuana to their friend and ends up being charged and convicted for distribution. Is that, per se, in the government's view, you know, an offense that would require or allow for disarmament under 922G1? You had mentioned, in connection with that, you mentioned previously that the scale of the bookmaking here being in the hundreds of thousands. Is that a relevant fact, or are we looking to the nature of the offense by-back to elements? So the court has before it an as-applied challenge by a particular person, and I think the court certainly has discretion to include whichever facts it finds relevant to the constitutional analysis. And so while we may not think it's necessary to have that hundreds of thousands of dollars-in fact, we think you just need to know that this person was convicted of this offense- if the court is going to put weight on facts underlying the conviction or facts post-dating it, then I think that opens up this sort of factual inquiry that would appropriately occur through fact-finding in district court. It's to me that you're making somewhat the same argument without using the same words that you used in your brief, the brief being that his conviction was for a serious crime, therefore he could be disarmed. But that holding out of Bindrup is now no longer the case in light of range. So it sounds like what you're saying is that being convicted of the crime that he initially was convicted of here, the predicate, is such a serious crime that he can be disarmed. Is that correct? That is correct, both serious and dangerous. I think those are two independent principles that can be drawn from the history. Now, I don't understand range to have said that those are not principles that you can draw from the history. In fact, range emphasized its narrowness. And I think as the court may see in the sort of flood of post-range one cases that have come along, those same principles are quite important in sustaining the application of Section 922 G1 and many other contexts, such as drug trafficking, in which its constitutionality has not previously come into question. But isn't the test more one of two things? Either somebody has an election to violence or that person, there's a special risk of firearm misuse. And it would seem that the latter would be the better tact to take, go for a remand, and try to show that other activities that he's done post-conviction here may put him in that category, such as providing security for another offense that he pledged to. I agree with Your Honor that it would be sufficient if there were someone who poses a special risk of danger to uphold the statute as applied to that person. I think where I'm not quite on the same page as whether it's necessary, but it's certainly if the court is deciding that it is necessary to find that a particular person poses a special risk of danger in some more individualized sense than what this legislative judgment reflects as applied to this criminal offense, then, yes, I think we are talking about individual facts that could be developed on remand. Do prongs appear to any longer fit within a, quote, serious crime, close quote? I apologize, Your Honor, I didn't hear the very beginning of your question. If danger or special risk of misuse of a firearm are generally what we are looking at today in light of Rahimi and range, how do you still hang on to the crimes can be so serious like this, which is bookmaking, could be so serious that a person can be disarmed? I did not see anything in range that said there is no historical principle that disarming someone on the basis of a serious crime is a permissible basis for Section 922 G1. In fact, I think the discussion of founding capital punishment and estate forfeiture laws illustrates that there are some circumstances in which the seriousness of the crime is going to matter, because when you look back to the founding, you see that what the founders did when faced with people who committed the serious crimes of the day was they imposed punishment up to and including death. Doesn't that rewind us to the sort of gestalt that we had before Rahimi and before range? What does serious mean? Are we taking into account more than the fact that it's a felony or felony equivalent? So, of course, our first line answer is that, no, you do not need to do that as a matter of first principles. But given range, of course, that answer is not sort of off the table in the circuit. And so I think you would need to look to I don't think it's a clear here are the multiple factors you look at. But I think you are getting a sense of what does the legislature today mean when it puts this into the felony or felony equivalent category? And I think you can look to the same types of general evidence you would look to in another Second Amendment case, which goes back to my answer one of the earlier questions that you look to the breadth of the disqualification you're talking about. You look to the evidence that's available. You look to the judgments of legislatures today. We have the difficulty here, though, that the Pennsylvania legislature and the Virginia legislature made these misdemeanors, right? And the federal law is boosting it. So it's not the state legislatures that intended that. And the federal legislature boosted it based on basically an irrebuttable presumption that if the authorized sentence is that long, that's enough. But Range's holding is that is not enough, right? So it can't be I mean, it's not clear to me what legislature intended what about danger here. But Range did not treat that as dispositive. I agree that Range didn't treat the maximum punishment as dispositive. But I don't think that means that the maximum punishment can be sort of tossed out the window as irrelevant either. We are talking about an offense here that had the disqualifying one had a five year maximum, which, of course, is the same maximum that was at issue in Range. But I think as far as the Pennsylvania legislature's judgment on that and other crimes, but the Pennsylvania criminal code reflects is that they have this unusual label of first degree misdemeanor for any offense punishable by up to five years in prison. And so I think the more relevant comparator is to other states that would call this a felony that would punish it by five years in prison, which I think that was the same argument. The binder plurality said, hey, yeah, these sex offenses with under a minor like in theory, they could be punished very heavily. But then we also got to look at how much this person is actually punished. That tells us something about how dangerous the person is. And it was relevant that there was no incarceration in those cases. There's no incarceration here. And that is another piece of evidence. It would seem that the district court would need to consider on remand. I think if what the district court is considering on remand is a hyper individualized to dangerousness determination that may resemble in many respects what ATF formally did under 18 U.S.C. 925 C where it assessed prospective likelihood of future danger. If that's what the inquiry is that this court understands it to be under range, then, yes, sort of all the individual facts I think would certainly be able to come in. OK, back to the serious. Did you ever you're cutting out? Yeah, you're cutting out the money here. Go ahead. Go over. Can you hear me now? Yes. To go back to the serious crime statement that you said. You look at Ray's language. Remember, you're cutting out again. I don't know if maybe it's a distance from the mic. I'm right on top of it. Can you hear me? Let's try one more time. We'll try it one more time. You continue to hang on to the serious crime test possibility of not truly being overruled by range. But range, I thought, said that such a principle operates at such a high level of generality that it waters down the right. I'm not you know, I have some sympathy for your point of view, but I don't see it any longer being the bellwether that you seem to think it is. So I think there's maybe two different things happening here that are important to separate. One is, what is the historical principle that we are talking about? And the second is, how is that principle applied to the law before the court? And what I took range to say is that regardless of what the historical principle is, and we don't need to get into it because this is a narrow decision. And this case is going to come out the same way under any principle. There is not a basis for saying felony in general. Felony punishment in general is enough. But I think the court didn't say and would be it would be an error, I think, to go this further step would be to say that there isn't a historical principle grounded in conviction for serious crime. That is a permissible basis for disarmament today for a vast array of felonies, including, I think, several of the ones that were listed in your honors concurrence in the first go around in range. But if not tethered to dangerousness, what makes it a serious offense? So I think you can look to the evidence of how serious it is, evidence of what legislatures today and over time are doing common sense that something may well be a serious crime. And, of course, the line between this can start to blur the more I think you get closer to recognizing that the dangerousness principle, I think, as we've understood it is broad enough to encompass felony. Now, that is no longer an available argument to us under range, but that doesn't mean that it can't encompass most felonies and that the burden wouldn't fall on an individual felon to explain and to show how is this person different than Mr. Range. And here we have someone who is sorry, they would have to show that they are similar to him in the relevant respects. And here we have someone who is quite different due not only to the underlying disqualifying conviction, but also this conduct we were talking about that involved running an illegal poker game where a SWAT team had to come in in 2011 and break it up. And there was professional security at the at the event. OK, well, that sounds like you completely agree. To find out what kind of post conviction conduct existed that might make this person in the category of showing a special danger of misuse of power. So I think you cut out a bit for the beginning of your question, unfortunately, but I. If you did, you understand what I was saying. I don't agree that we don't know that yet. I think we do know a sufficient amount of information to affirm the district court's judgment in this case. If the court does not think that that is correct. I think what we definitely do not know enough is enough information to rule in Mr. Pizzolini's favor as a matter of law. OK. Thank you. Thank you. Mr. We can look at the way legislatures treat this today, the way legislatures have punished this today. And I think that flies in the face of what Broon and Rahimi and Range discussed when we talk about the seriousness and the ability of the government to disarm someone permanently because it's a historical analysis. What did the founders understand? OK, I took Mr. Soter to be making a point that maybe there weren't bookmaking operations like the one covered by this at the time of the founding, just as there wasn't cocaine trafficking at the time of the founding. And if that's the case, we have to be careful to cast our analogies broadly enough to look at is this the kind of crime that for similar principles. So at least one, if not the principle in range, was one of physical danger. Now, that was easy with food stamps. But he seemed to want to make a pitch that, OK, you get to the roaring 20s and prohibition and organized crime and Tommy guns. And suddenly you have a violent enterprise springing up in a way that there wasn't that kind of association with violence at the founding. So, you see, are we allowed then to abstract to that level of generality of, OK, maybe there weren't violent, you know, speakeasies and numbers games then. But we could look at other kinds of crimes associated with violence at the time of the founding. What would your response to that? I think that's too general of a principle, Your Honor. I think what you need to look for is gambling has been a part of human society since its beginning. But this isn't a general gambling statute. His point is this is a specific bookmaking and pool selling statute. Correct, where he was an organizer of a book, which in most of the revolutionary era and founding era laws punished individuals where gambling took place, which was cited in Pistolini's supplemental letter brief. And in those particular cases, they shut down the business. They labeled it a public nuisance and they may have fined the owners. The substantial minority of the laws at the time fined the owners and even a smaller minority actually imprisoned them. And none that I could discover, Your Honor, was for more than a year. OK, but we I mean, it puts us in the awkward position to be trying to adjudicate this historical dispute in the first instance as to whether these laws were covering bookmaking or being enforced against something close to a modern bookmaking operation. Isn't that something the district court should sort out in the first instance? No, I don't believe it needs to. I believe this court can do so in the first instance. As the Broom Court and Rahimi said, these are analyzed or analogizing laws from the past to the present and making legal arguments based on the analogy of something judges that they do every single day. And I don't think it's necessary to remand. Sorry, Your Honor, may I finish? permanent disarmament based on a modern crime of bookmaking. I understand your argument that there hasn't been any. There's no on this record anyway, no evidence of continued criminal activity over the last decade plus. But what if what if there were? Is your argument that a court can't consider intervening conduct that demonstrates someone remains a danger? Is it only the offense of conviction or can they can you look at post-conviction conduct? Leave under Rahimi if there's a judicial determination based on the facts that this individual is a danger to a specific person. They may be temporarily disarmed based on that particular finding for a period of time. And Rahimi, it was the length that the protection from abuse order was active. But isn't that the sort of finding that could be made now that could be made when someone comes forward seeking a declaratory judgment? The problem that the district court wrote into is there's no law could point to one certifying that it can be disarmable and two would limit it in nature to a period of time. In a protection from abuse context, at least the one I'm familiar with in Pennsylvania, they're up to three years. If an individual wants that protection from abuse order extended, needs to come back to court and say this particular person is still a danger after three years. Going back to the district court for an analysis, as Your Honor suggests, I don't know. One, there's a federal statute that the judge can use to disarm, or what is the standard? How often, if that particular finding is made that this person is still a danger, how often, how long do they have to wait in order to come back? Is that just a, it sounds like you'd ask a judge to really be, sorry. No, so you're comfortable with judicial findings here. All we know about and all that's been stipulated to is the Pennsylvania misdemeanor gambling crime of the Virginia one. But rap sheets are inconsistent, you know, and routinely defense lawyers are surprised their client turns up with some conviction in some other state. Let's say it goes back on remand and the government finds a 2021 conviction for pulling a gun on somebody. Is there any reason that they couldn't develop that on remand and use it to show that he posed a danger within the last few years involving a weapon? They could use that, but I think we still run into the problem, Your Honor, that I suggested. What does the court then allow to do with that particular finding? Does that result in permanent disarmament? Because, again, in Rahimi, in that particular case, it was a judicial finding that he's a danger to an individual and that that is a temporary disarmament. Okay, but let's say it's within the last few years. We don't have to make a permanent finding. The district could just find, at least now, he's a danger. So you don't have you don't contest it. In theory, they could dig up some rap sheet that showed a use of a weapon in the last few years, and that would make things much harder for you. In theory, they could find that. Yes, Your Honor. Jam room. Okay, thank you. Thank you. We'll ask the transcript be prepared of argument and the party share the cost.